

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-228-CV

LARRY DEAN SPEEGLE                                                                 APPELLANT

V.

HARRIS METHODIST HEALTH
SYSTEM AND HARRIS                                                                  APPELLEES
METHODIST FORT WORTH

------------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION ON REHEARING

------------

We withdraw our opinion and judgment of October 29, 2009, and substitute the following. We deny appellant's Motion for Rehearing.

### I.    Introduction

Appellant Larry Dean Speegle brings this appeal complaining of the trial court's summary judgment establishing the validity and amount of a hospital lien filed by appellees Harris Methodist Health System and Harris Methodist Fort

Worth and granting appellees recovery for the amount of the lien plus attorney's fees. We affirm.

## II. Background

On June 15, 2001, Larry Dean Speegle was involved in an automobile accident with Santiago Guzman, an employee or agent of SpectraSite Construction, Inc. (SpectraSite). Speegle was care-flighted to Harris Methodist Fort Worth (the Hospital) where he was admitted and treated from June 15, 2001, to July 11, 2001. The Hospital's total charges for this care were $142,915.01. On June 29, 2001, Harris Methodist Health System and its subsidiary, the Hospital, filed a notice of hospital lien for these services. Although Speegle is entitled to Medicare, the Hospital has not billed or received payment from Medicare for this treatment.

On or about August 11, 2004, Speegle and his wife entered into a Compromise Settlement Agreement and Release (the Settlement Agreement) with Guzman and WesTower Communications, Inc. (SpectraSite's successor). The Settlement Agreement provided that "$1,250,000.00[] . . . will be paid to the Releasing Parties and medical lien holders as follows: 1. $391,064.43 to Larry Speelge [sic], [the Hospital], Trailblazer Health Enterprises L.L.C. [a Medicare contractor] and Kent, Good & Anderson, P.C." $391,064.43 is the exact total of appellees' lien amount ($142,915.01) and Medicare's lien amount

2

($248,149.42). In the Settlement Agreement, the parties further agreed that "the total of these two liens is being paid as described in Paragraph IV. A. 1. above *with the intent* that the liens of [the Hospital] and Medicare *will be satisfied* with these funds (emphasis added)."

On August 9, 2004, SpectraSite's insurer, Zurich American Insurance Co., issued to Speegle or his agent a check made jointly payable to Speegle, the Hospital, Trailblazer Health Enterprises (Medicare's fiscal intermediary), and Kent, Good & Anderson, Speegle's counsel, in the amount of $391,064.43. Speegle, however, did not pay the Hospital the $142,915.01 payment.[1] Instead, on November 30, 2004, he filed an original petition, seeking a declaration that the hospital lien is invalid because appellees failed to comply with Chapter 146 of the Texas Civil Practice and Remedies Code by not billing Medicare for Speegle's treatment. Harris Methodist Health System and the Hospital countersued, seeking a declaration that the lien was valid, recovery of the amount of the lien under the Settlement Agreement, and attorney's fees.

Speegle and appellees filed competing motions for traditional summary judgment on all claims. The trial court denied Speegle's motion and rendered an interlocutory summary judgment granting appellees' motion on both

---

[1] ... According to Speegle, settlement monies were set aside in a fund to pay the hospital lien, and "the fund is still in existence today."

counterclaims, fixing the amount of the hospital lien at $142,915.01, and ordering Speegle to pay appellees that amount.

The issue of the appellees' attorney's fees was tried to a jury. Over Speegle's objection, the jury was not asked to segregate attorney's fees between appellees' two claims. The jury returned a verdict awarding appellees $50,512.50 in attorney's fees through trial plus attorney's fees on appeal. The trial court rendered a final judgment on March 4, 2008, and this appeal followed.

### III. Standard of Review

In a traditional summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[2] The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.[3] Summary judgment is proper when parties do not dispute the relevant facts.[4]

---

[2] Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

[3] *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

[4] *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000).

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[5] Evidence that favors the movant's position will not be considered unless it is uncontroverted.[6] But we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented.[7]

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.[8] When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented.[9]

---

[5] ... *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

[6] ... *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965).

[7] ... *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

[8] ... *Clear Creek Basin Auth.*, 589 S.W.2d at 678.

[9] ... *Valence Operating Co.*, 164 S.W.3d at 661.

## IV. Validity of the Hospital Lien

In his first issue, Speegle challenges the trial court's order granting appellees' summary judgment on their hospital lien and breach of contract claims. Speegle contends that the lien is invalid because the Hospital was required to timely bill and receive payment for its services from a third party payer, Medicare, rather than create a lien under Chapter 55 of the Texas Property Code.

To secure the costs hospitals incur when treating accident victims, Chapter 55 of the Texas Property Code generally grants hospitals a lien on any cause of action a patient may have against a tortfeasor.[10] Specifically, section 55.002(a) of the property code provides:

> A hospital has a lien on a cause of action or claim of an individual who receives hospital services for injuries caused by an accident that is attributed to the negligence of another person. For the lien to attach, the individual must be admitted to a hospital not later than 72 hours after the accident.[11]

---

[10] ... Tex. Prop. Code Ann. § 55.002(a) (Vernon 2007); *see Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007). The parties do not dispute that appellees are a "hospital" within the meaning of this statute. And, contrary to Speegle's contention, Chapter 55 does not prohibit liens involving treatment of individuals who are Medicare beneficiaries or covered under private medical insurance. *See* Tex. Prop. Code Ann. §§ 55.001–.008 (Vernon 2007).

[11] ... Tex. Prop. Code Ann. § 55.002(a).

This lien attaches to the plaintiff's cause of action, a judgment, or the proceeds of a settlement.[12] Once the lien is filed, a tortfeasor cannot obtain a release by judgment or settlement unless the hospital's charges are paid.[13]

Prior to 1980, federal law provided that "Medicare was the primary payer for hospital and medical services received by its beneficiaries."[14] In 1980, however, Congress enacted secondary payer provisions that provided that Medicare is a secondary payer in certain cases when a Medicare beneficiary is covered by other insurance.[15] The purpose behind the secondary payer provisions was to achieve major fiscal savings in the Medicare program.[16] As stated in the House Report on the bill in which the secondary payer provision was originally enacted, Congress intended to reverse the policy then in effect that established Medicare as the primary payer "even in cases in which a

---

[12] *Id.* § 55.003(a) (Vernon 2007).

[13] *Id.* § 55.007 (Vernon 2007); *Linnstaedter*, 226 S.W.3d at 411.

[14] *Am. Hosp. Ass'n v. Sullivan*, No. 88-2027(RCL), 1990 WL 274639, at *6 (D.D.C. May 24, 1990).

[15] Omnibus Budget Reconciliation Act of 1980, Pub. L. No. 96-499, § 953, 94 Stat. 2599 (codified as amended at 42 U.S.C. § 1395y(b)(2) (Supp. 2009)).

[16] *Varacalli v. State Farm Mut. Auto. Ins. Co.*, 763 F. Supp. 205, 208 (E.D. Mich. 1990); *see also Abrams v. Heckler*, 582 F. Supp. 1155, 1164 (S.D.N.Y. 1984).

7

beneficiary's need for services [was] related to an injury or illness sustained in an auto accident and the services could have been paid for by a private insurance carrier under the terms of an automobile insurance policy."[17]

At the time of Speegle's treatment at the Hospital, the relevant secondary payer statute, 42 U.S.C. § 1395y(b)(2)(A), provided in pertinent part:

> Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that --
>
> . . . .
>
> (ii) payment has been made or can reasonably be expected to be made promptly (as determined in accordance with regulations) under a . . . liability insurance policy or plan . . . .[18]

This statute expressly prohibits Medicare from paying if a liability carrier has already paid or is reasonably expected to pay "promptly." According to the regulations adopted by the Health Care Financing Administration (HCFA), "promptly" is defined as within 120 days of the earlier of the date a lien is filed against a potential liability settlement or the date of discharge.[19] Therefore, under federal statutory and regulatory laws, Medicare is a secondary payer in

---

[17] H.R. Rep. No. 96-1167, § 825, at 389 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 5526, 5752.

[18] 42 U.S.C. § 1395y(b)(2)(A) (2001) (current version at 42 U.S.C. § 1395y(b)(2)(A), (B) (Supp. 2009)).

[19] 42 C.F.R. § 411.50(b) (2001).

situations where a Medicare beneficiary's hospital bill is covered by liability insurance, and Medicare is prohibited from paying during the 120-day "promptly" period.[20]

With respect to the rights of providers after the expiration of the "promptly" period, the HCFA issued a 1995 memorandum providing that the provider or supplier "*may, but is not required to* bill Medicare for conditional payment if the liability insurance claim is not finally resolved."[21] HCFA's successor entity, the Centers for Medicare & Medicaid Services (CMS), has published this same construction in Chapter 2 of its *Medicare Secondary Payer Manual* (MSPM).[22] Section 40.2 of the MSPM is entitled "Billing in MSP Liability Insurance Situations" and provides, in pertinent part:

> Generally, providers . . . must bill liability insurance prior to the expiration of the promptly period rather than bill Medicare. . . .

---

[20] The HCFA regulations provide that "Medicare benefits are secondary to benefits payable by a third party payer *even if State law* or the third party payer states that its benefits are secondary to Medicare benefits or otherwise limits its payments to Medicare beneficiaries." 42 C.F.R. § 411.32(a)(1) (2001) (emphasis added).

[21] *Joiner v. Med. Ctr. E., Inc.*, 709 So. 2d 1209, 1220 (Ala. 1998) (emphasis added) (quoting an August 21, 1995 HCFA memorandum, which was in turn quoted in a March 12, 1996 HCFA memorandum).

[22] U.S. Dep't of Health & Human Servs., Ctrs. for Medicare & Medicaid Servs., *Medicare Secondary Payer (MSP) Manual*, ch. 2, § 40.2 (2009), http://www.cms.hhs.gov/manuals/downloads/msp105c02.pdf.

Following expiration of the promptly period . . . a provider . . . may *either*:

- bill Medicare for payment and withdraw all claims/liens against the liability insurance/beneficiary's liability insurance settlement . . . ; *or*

- maintain all claims/liens against the liability insurance/beneficiary's liability insurance settlement.

. . . .

The following applies to providers who participate in Medicare . . . :

- if the provider bills Medicare, the provider must accept the Medicare approved amount as payment in full and may charge beneficiaries only deductibles and coinsurance.[sic]

- if the provider pursues liability insurance, *the provider may charge beneficiaries actual charges*, up to the amount of the proceeds of the liability insurance less applicable procurement costs but may not collect payment from the beneficiary until after the proceeds of the liability insurance are available to the beneficiary.[23]

Therefore, under HCFA and CMS regulations, after the 120-day "promptly" period ends, whenever services provided to a Medicare beneficiary are also covered by a liability insurance policy, providers have the right either to bill Medicare or to maintain a lien against a potential liability insurance settlement.

---

[23] ... *Id.* (emphasis added).

10

An agency's construction of its own regulations is entitled to substantial deference.[24] We, therefore, defer to the appropriate agency's construction of federal Medicare law granting appellees a federal right to maintain their lien against Speegle's liability insurance settlement in lieu of billing Medicare.[25] Accordingly, we hold that the Hospital is entitled to recover the $142,915.01 amount of the lien from Speegle.[26] We overrule the portion of Speegle's first

---

[24] ... *Lyng v. Payne*, 476 U.S. 926, 939, 106 S. Ct. 2333, 2341 (1986); *see Legend Airlines, Inc. v. City of Fort Worth*, 23 S.W.3d 83, 95 (Tex. App.—Fort Worth 2000, pet. denied); *see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F. Supp. 2d 1017, 1046 (S.D. Tex. 1998) ("As the agency charged with enforcing regulations . . . HHS' and its subdivision's, HCFA's, interpretation of those regulations is entitled to deference.").

[25] ... Our holding does not address the validity of a hospital lien in situations where the patient is the beneficiary of private medical insurance rather than Medicare.

[26] ... Speegle cites *Linnstaedter*, 226 S.W.3d at 411, for the proposition that appellees may not file a lien against Speegle's tort claim because a hospital cannot sue a patient for the difference between its normal rate and an applicable discounted rate. *Id.* However, that case involved a patient covered under workers' compensation insurance, and the court expressly grounded its holding on the Texas Labor Code's prohibition of claims against workers' compensation patients. *Id.* (citing Tex. Lab. Code Ann. § 413.042(a) (Vernon 2006) (providing that hospitals "may not pursue a private claim against a workers' compensation claimant" for all or part of the costs of treatment)). Speegle also cites federal case law prohibiting a hospital lien when the provider had already received payment from a third party payer yet still sought to enforce its lien to collect the difference between its normal charges and the discounted reimbursement rate; those cases likewise do not apply here because the Hospital has not been paid by Medicare. *See Rybicki v. Hartley*, 792 F.2d 260, 261 (1st Cir. 1986) (lien holder had been paid by Medicare); *Satsky v.*

11

issue challenging the trial court's judgment in favor of appellees on their hospital lien.[27]

V.  Federal Medicare Law Preempts Section 146.002(c) of the
Texas Civil Practice and Remedies Code

In his second issue, Speegle argues that the trial court erred by denying his summary judgment motion to invalidate the hospital lien because appellees failed to comply with Texas Civil Practice and Remedies Code section 146.002(c)'s requirement that health care service providers timely bill third party payers, including Medicare, whenever they are "authorized" to do so.[28]

Civil practice and remedies code section 146.002(c) provides:

If the health care service provider is *required or authorized to directly bill* a third party payor operating under federal or state law, including *Medicare* and the state Medicaid program, *the health care service provider shall bill the third party* payor not later than:

(1) the date required under any contract between the health care service provider and the third party payor or the date required by federal regulation or state rule, as applicable; or

---

*United States*, 993 F. Supp. 1027, 1028–29 (S.D. Tex. 1998) (lien holder paid by private prepaid insurance plan); *Holle v. Moline Pub. Hosp.*, 598 F. Supp. 1017, 1019 (C.D. Ill. 1984) (lien holder paid by Medicare).

[27] Based on our holding regarding appellees' recovery under the hospital lien, we need not reach, and express no opinion regarding, the portion of appellant's first issue challenging the trial court's judgment granting appellees' breach of contract claim. *See* Tex. R. App. P. 47.1.

[28] *See* Tex. Civ. Prac. & Rem. Code Ann. § 146.002 (Vernon 2005).

12

(2) if there is no contract between the health care service provider and the third party payor and there is no applicable federal regulation or state rule, the first day of the 11th month after the date the services are provided.[29]

Under section 146.003(a), a health care service provider who violates section 146.002's prompt billing requirements "*may not recover* from the patient any amount that the patient would have been entitled to receive as payment or reimbursement under a health benefit plan or that the patient would not otherwise have been obligated to pay had the provider complied with Section 146.002."[30] Thus, chapter 146 requires medical care providers to bill Medicare for services received by Medicare-eligible patients when providers are permitted—such as after the 120-day "promptly" period.[31] In such a circumstance, section 146.002(c) conflicts with federal law requiring Medicare to be regarded as a secondary payer and granting hospitals the option of maintaining a hospital lien, even if they are authorized to bill Medicare instead.[32]

---

[29]... *Id.* § 146.002(c) (emphasis added).

[30]... *Id.* § 146.003(a) (Vernon 2005) (emphasis added).

[31]... *Id.* § 146.002(c); *see* 42 U.S.C. § 1395y(b)(1) (2001).

[32]... *See* 42 C.F.R. § 411.32 (2001); *Joiner*, 709 So. 2d at 1220–21 (applying Medicare secondary payer statutes and HCFA policies); *Parkview Hosp., Inc. v. Roese*, 750 N.E.2d 384, 390–91 (Ind. Ct. App. 2001) (same). Appellees elected to maintain the hospital lien rather than bill Medicare.

When state and federal law conflict, we look to federal preemption principles derived from the Supremacy Clause of the United States Constitution.[33] When a state law conflicts with valid federal law, the state law is preempted and has no effect.[34] A federal agency acting within the scope of its congressionally delegated authority may similarly preempt state law.[35] A state law conflicts with federal law and is thus preempted when the state law stands as an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[36] In determining whether a state statute is an obstacle to the accomplishment and execution of the full purposes and

---

[33] U.S. Const., art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

[34] *City of New York v. Fed. Commc'ns Comm'n*, 486 U.S. 57, 63–64, 108 S. Ct. 1637, 1642 (1988); *see also BIC Pen Corp. v. Carter*, 251 S.W.3d 500, 504 (Tex. 2008).

[35] *City of New York*, 486 U.S. at 63–64, 108 S. Ct. at 1642; *La. Pub. Serv. Comm'n v. Fed. Commc'ns Comm'n*, 476 U.S. 355, 368–69, 106 S. Ct. 1890, 1898–99 (1986).

[36] *Wyeth v. Levine*, ---- U.S. ----, 129 S. Ct. 1187, 1193–94 (2009) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 404 (1941)); *see also BIC Pen Corp.*, 251 S.W.3d at 504.

14

objectives of Congress in passing a federal statute, we look to the language of the statute and Congress's intent.[37]

We have held that 42 U.S.C. § 1395y(b)(1) and HCFA regulations provide that Medicare is the secondary source of payment when other funds are available to pay a Medicare-eligible patient's hospital charges.[38]  The requirement in section 146.002 that health care providers must bill Medicare whenever authorized to do so presents an obstacle to accomplishing this objective.  Therefore, we hold that section 146.002(c) is preempted to the extent it requires a hospital to bill Medicare as a primary source of payment when other funds are available to pay the hospital charges.[39]  We overrule Speegle's second issue.

## VI.    Segregation of Appellees' Attorney's Fees

In his third issue, Speegle argues that the trial court erred by awarding appellees' attorney's fees based on the jury's verdict because appellees were

---

[37] _... See Wyeth_, ---- U.S. ----, 129 S. Ct. at 1194–95 (holding that "the purpose of Congress is the ultimate touchstone in every pre-emption case" and determining intent through statutory language and legislative history).

[38] _... See_ 42 U.S.C. § 1395y(b)(1) (2001); 42 C.F.R. § 411.32 (2001).

[39] _... See, e.g._, _BIC Pen Corp._, 251 S.W.3d at 504 (holding that "state law is impliedly preempted if it 'actually conflicts with federal law or regulations,' because . . . state law obstructs accomplishing and executing Congress' full purposes and objectives").

15

not entitled to recover attorney's fees on their claim to enforce the lien[40] and the recoverable fees were not segregated from the non-recoverable fees.[41]

As a general rule, fee claimants have always been required to segregate attorney's fees between claims for which they are recoverable and claims for which they are not.[42] Only when a claimant establishes that the same "discrete legal services advance both a recoverable and unrecoverable claim" are the fees "so intertwined that they need not be segregated."[43]

The Hospital pleaded for recovery of attorney's fees under sections 37.009 and 38.001 of the Texas Civil Practice and Remedies Code.[44] The

---

[40]... *Hermann Hosp. v. Vardeman*, 775 S.W.2d 866, 868 (Tex. App.—Houston [1st Dist.] 1989, no writ) (holding that "the hospital lien statute . . . clearly does not provide for the recovery of attorney's fees for enforcement of the lien").

[41]... Speegle does not challenge the reasonableness or necessity of the attorney's fees apart from his claim that they should not be awarded because they are not segregated.

[42]... *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006).

[43]... *Id.* at 313–14; *see Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 455 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (op. on reh'g). Speegle's contention that *Chapa* demands segregation of recoverable and non-recoverable fees in *all* cases is incorrect. *See Chapa*, 212 S.W.3d at 313–14.

[44]... *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 2008) (authorizing award of attorney's fees to any party to declaratory judgment action); Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 2008) (authorizing award of attorney's fees on breach of contract and other claims).

Hospital's defense of Speegle's declaratory judgment action and its action to recover on the lien both depended on establishing the validity of the hospital lien. Because discrete legal services advanced both the declaratory judgment action and the action to recover on the lien, the resulting legal fees were so intertwined that they need not be segregated.[45] Thus, the trial court did not err by failing to segregate attorney's fees. We overrule Speegle's third issue.

## VII.    Conclusion

We affirm the trial court's final judgment decreeing that appellant take nothing, that the Hospital's lien be fixed at the sum of $142,915.01, and that the Hospital recover that amount under the lien, in addition to interest and attorney's fees.

PER CURIAM

PANEL:  CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

DELIVERED:  December 17, 2009

---

[45] ... *See Chapa*, 212 S.W.3d at 313–14.

17