

**NUMBER 13-12-00421-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MCALLEN HOSPITALS, L.P. D/B/A**　　　　　　　　　　**Appellant,**
**MCALLEN MEDICAL CENTER**

**v.**

**ARTURO GOMEZ,**　　　　　　　　　　　　　　　　　**Appellee.**

---

**On appeal from the County Court at Law No. 1**
**of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Longoria**
**Memorandum Opinion by Justice Longoria**

By one issue, appellant, McAllen Hospitals, L.P. d/b/a McAllen Medical Center, appeals from the trial court's interlocutory order denying its motion to dismiss based on the failure of appellee, Arturo Gomez, to comply with the expert report requirements of chapter 74 of the Texas Civil Practice and Remedies Code.  *See* TEX. CIV. PRAC. & REM.

CODE ANN. §§ 51.014(a)(9), 74.351 (West 2011). We affirm in part and reverse and remand in part.

## I. BACKGROUND

On November 6, 2009, appellee was injured in an automobile collision in Rio Grande City, Starr County, Texas. Appellee received treatment for his injuries at Starr County Memorial Hospital in Rio Grande City within 72 hours of the occurrence. Over a year later, on November 15, 2010, appellant provided appellee with further treatment for his injuries in McAllen, Hidalgo County, Texas. Thereafter, on November 18, 2010, appellant's agent, Meridian Revenue Solutions, LLC ("Meridian"), filed a hospital lien against appellee for what were purportedly reasonable and necessary medical expenses incurred by appellant in treating appellee. *See* TEX. PROP. CODE ANN. §§ 55.002(a), 55.005 (West Supp. 2011).

Appellee commenced the instant suit against appellant and Meridian, alleging three causes of action: (1) unconscionable action or course of action in violation of the Texas Deceptive Trade Practices Act ("DTPA"), *see* TEX. BUS. & COM. CODE ANN. § 17.50(a)(3) (West 2011); (2) declaratory judgment, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2008); and (3) a fraudulent-lien claim under chapter 12 of the Texas Civil Practice and Remedies Code, *see id.* § 12.003(a)(8) (West Supp. 2011).

Among other things, appellee alleges that the hospital lien, which was filed with the Hidalgo County Clerk, is fraudulent on its face because it purports to secure payment of expenses incurred in treating appellee more than one year after the accident that caused his injuries. *See* TEX. PROP. CODE ANN. § 55.004(b) (West 2007).

2

Appellee seeks a judicial declaration that the lien is invalid and of no effect based on the following grounds:

(1) Appellant is neither the admitting hospital, nor a hospital to which appellee was transferred, as required under Texas Property Code section 55.002(b), *see id.* § 55.002(b);

(2) Appellee was not admitted to appellant within 72 hours after the incident, as required under Texas Property Code section 55.002(a), *see id.* § 55.002(a);

(3) Appellant seeks to assert a hospital lien for services rendered over a year after appellee's hospitalization, well outside the 100-day limit imposed by Texas Property Code section 55.004(b), *see id.* § 55.004(b); and

(4) The injections received by appellee cannot be defined as "emergency hospital care" under the Texas Property Code because they were not provided to "treat a serious medical problem of recent onset or severity," as required by Texas Property Code section 55.004(a). *See id.* § 55.004(a). Specifically, they were provided for the treatment of a medical problem that had existed for over a year, as known to both appellee and appellant.

In the alternative, appellee seeks a judicial declaration that the hospital lien does not attach to the excessive amounts charged by appellant—specifically, those amounts that exceed a reasonable and regular rate for those services.

Appellant filed a motion to dismiss and for sanctions based on appellee's failure to file an expert report as required by section 74.351 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. The trial court denied the motion, and this interlocutory appeal ensued.

## II. ANALYSIS

### A. Standard of Review

The denial of the motion to dismiss is reviewed for abuse of discretion. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). However, when the issue, as in this case,

3

involves the applicability of chapter 74 to the plaintiff's claims and requires an interpretation of the statute, we apply a de novo standard of review. *Buck v. Blum*, 130 S.W.3d 285, 290 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Ponce v. El Paso Healthcare Sys., Ltd.*, 55 S.W.3d 34, 36 (Tex. App.—El Paso 2001, pet. denied).

## B. Applicable Law

Chapter 74 of the Texas Civil Practice and Remedies Code entitles a defendant to dismissal of a healthcare liability claim if the defendant is not served, within 120 days of the date suit was filed, with an expert report showing that the claim has merit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b). The report must provide a fair summary of the expert's opinions as of the date of the report regarding: (1) applicable standards of care; (2) the manner in which the care rendered by the healthcare provider failed to meet the standard of care; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *Id.* § 74.351(r)(6).

In this case, we must decide which of appellee's three causes of action, if any, are healthcare liability claims subject to chapter 74. A healthcare liability claim consists of three elements:[1]

> (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health

---

[1] Chapter 74 of the Texas Civil Practice and Remedies Code provides the following definition of a healthcare liability claim:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West 2011).

4

care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant.

*Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 180 (Tex. 2012); *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 662 (Tex. 2010).

## C. Discussion

Because there is no dispute concerning appellant's status as a healthcare provider, we evaluate appellee's three causes of action to determine whether they satisfy the second and third elements of a healthcare liability claim.

### 1. DTPA Cause of Action

We begin with appellee's cause of action under the DTPA. Appellee complains that appellant committed an "unconscionable action or course of action." *See* TEX. BUS. & COM. CODE ANN. § 17.50(a)(3).

An "unconscionable action or course of action" is defined by statute to mean, "[A]n act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* § 17.45(5) (West 2011). "Unconscionability under the DTPA is an objective standard for which scienter is irrelevant." *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001). "To prove an unconscionable action or course of action, a plaintiff must show that the defendant took advantage of his lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Id.* (internal quotations omitted). "This should be determined by examining the entire transaction and not by inquiring whether the defendant intended to take advantage of the consumer or acted with knowledge or conscious indifference." *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex. 1985).

5

Appellee complains that he was overcharged for services rendered by appellant. Specifically, appellee complains that appellant took advantage of his lack of knowledge by charging him an amount exceeding a reasonable and regular rate for the services rendered. According to appellant, the claim satisfies the second element of a healthcare liability claim because hospital billing for healthcare services rendered is a "professional or administrative service[] directly related to health care." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). We agree.

Chapter 74 defines "professional administrative services" as follows:

"Professional or administrative services" means those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs.

*Id.* § 74.001(a)(24). Section 311.002(b) of the Texas Health and Safety Code requires hospitals to prepare and provide, on request, an "itemized statement of the billed services provided to the person." TEX. HEALTH & SAFETY CODE ANN. § 311.002(b) (West 2010). In addition, the statute provides, "The Texas Department of Health or other appropriate licensing agency may enforce this section by assessing an administrative penalty, obtaining an injunction, or providing any other appropriate remedy, including suspending, revoking, or refusing to renew a hospital's license." *Id.* § 311.002(g). Thus, hospital billing appears to fit within the definition of "professional or administrative services." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(24).

To satisfy the second element of a healthcare liability claim, the professional or administrative service must be "directly related to health care." *Id.* § 74.001(a)(13). Chapter 74 defines "health care" to mean "any act or treatment performed or furnished,

6

or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(a)(10). Although we have previously held that fraudulent billing practices are not directly related to health care, appellee has not alleged that appellant prepared a fraudulent bill or engaged in fraudulent billing practices. *See Pallares v. Magic Valley Electric Coop, Inc.*, 267 S.W.3d 67, 74 (Tex. App.—Corpus Christi 2008, pet. denied) (holding that "underlying claims [that] directly pertain to [provider's] alleged fraudulent billing practices . . . do not directly relate to treatment provided"). Instead, appellee alleges that he was billed an unreasonable amount for the healthcare services rendered. Therefore, the complained-of conduct is directly related to health care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). Accordingly, we conclude that appellee's DTPA claim satisfies the second element of a healthcare liability claim.

Next, we consider whether appellee's DTPA claim satisfies the third element of a healthcare liability claim, which is that "the defendant's act or omission complained of must proximately cause the injury to the claimant." *Tex. W. Oaks Hosp., LP*, 371 S.W.3d at 180. Appellee alleges that appellant charged him an amount exceeding a reasonable and regular rate for the services rendered. In addition, appellee alleges that he has suffered mental anguish. Thus, we must decide whether an economic injury accompanied by mental anguish is sufficient to satisfy the injury element of a healthcare liability claim. We conclude that it is.

In *PM Management-Trinity NC, LLC v. Kumets*, 368 S.W.3d 711, 720 (Tex. App.—Austin 2012, pet. filed), the Austin Court of Appeals held that "[a] health care liability claim must entail more than pure economic loss." The court noted that, in the

7

context of chapter 74, "the term 'injury' would seem to carry with it the implication that the alleged deviation from an accepted standard of care must cause the plaintiff to suffer some personal injury, whether physical, mental, or emotional." *Id*. at 718. Therefore, the court concluded that an economic injury, with no accompanying bodily injury or other personal injury, is insufficient to satisfy the injury element of a healthcare liability claim:

> We believe that interpreting the TMLA to require an injury that involves more than mere out-of-pocket economic harm accurately reflects the "old law, the evil, and the remedy" and more closely serves the legislature's purpose in enacting chapter 74. Thus, in our view, for a cause of action to be a health-care-liability claim within the purview of the TMLA, the "injury" that proximately results from the alleged wrongful conduct must involve more tha[n] simply economic harm. Rather, it must also involve some type of personal injury, including that which would entitle the plaintiff to seek to recover noneconomic damages.

*Id*. at 719 (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 41.001 (West 2008) (defining noneconomic damages as damages awarded for purpose of compensating claimant for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship or society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages); 74.001(a)(20) (stating that, for purposes of chapter 74, "noneconomic damages" has the meaning assigned by section 41.001)). The court held, "In the present case, the trial court could reasonably have concluded that the [plaintiffs'] retaliation claim alleged only economic loss, not injury to or death of [the patient], and thus did not include allegations sufficient to meet the third element of a health-care-liability claim." *Id*. at 721 (internal quotations omitted); *see also Victoria Gardens of Frisco v. Walrath*, 257 S.W.3d 284, 289 (Tex. App.—Dallas 2008, pet.

8

denied) ("Thus, on its face, Walrath's second amended petition did not affirmatively state the third element of a health care liability claim, that Victoria Gardens' breaches of applicable standards of care proximately result[ed] in injury to or death of a claimant.") (quotations omitted).

In this case, appellee has alleged mental anguish, in addition to an economic injury. Therefore, his DTPA claim satisfies the injury element of a healthcare liability claim.[2] Having concluded that appellee's DTPA claim meets each of the three elements of a healthcare liability claim, we hold that it is a healthcare liability claim subject to chapter 74. We further conclude that the trial court erred in denying appellant's motion to dismiss with respect to appellee's DTPA claim.

### 2. Claim for Declaratory Relief

Next, we evaluate appellee's claim for declaratory relief.[3] In this cause of action, appellee alleges that appellant filed a hospital lien that is invalid under the relevant provisions of chapter 55 of the Texas Property Code. *See* TEX. PROP. CODE ANN. §§ 55.002(a), 55.004. Specifically, appellee alleges that appellant filed a hospital lien under circumstances that did not entitle appellant to file a hospital lien. *See id.*

---

[2] Our conclusion is the same regardless of whether we use the approach of the Austin Court of Appeals in *PM Management-Trinity NC, LLC v. Kumets*, 368 S.W.3d 711, 720 (Tex. App.—Austin 2012, pet. filed) (holding that an "injury" for purposes of the TMLA "must also involve some type of personal injury") or the approach of the Fort Worth Court of Appeals in *TTHR, L.P. v. Coffman*, 338 S.W.3d 103, (Tex. App.—Fort Worth 2011, no pet.) (refusing "to add the word 'physical' to the injury requirement of the TMLA"). Therefore, we express no opinion on the respective approaches.

[3] We note that "[w]hen the underlying facts are encompassed by provisions of the TMLA in regard to a defendant, then all claims against that defendant based on those facts must be brought as health care liability claims." *Yamada v. Friend*, 335 S.W.3d 192, 193–94 (Tex. 2010). This rule applies when the claims are "based on one set of underlying facts." *Id.* at 193. Thus, regardless of how it is pled, a claim is a healthcare liability claim if it is based on "the same actions and omissions" as a healthcare liability claim. *Id.* at 197. "[I]f the gravamen or essence of a cause of action is a health care liability claim, then allowing the claim to be split or spliced into a multitude of other causes of action with differing standards of care, damages, and procedures would contravene the Legislature's explicit requirements." *Id.* Thus, we must evaluate the "substantive basis [and] the nature of" appellee's two remaining causes of action to determine whether they are healthcare liability claims. *Id.*

9

Appellee seeks a judicial declaration that the hospital lien is invalid and of no effect. In the alternative, appellee seeks a judicial declaration that the lien did not attach to amounts exceeding a reasonable and regular rate for the services rendered.

A hospital lien is a method of securing payment. *See Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 309 (Tex. 1985) (stating that the purpose of the lien statute "is to provide hospitals an additional method of securing payment for medical services"). Unlike hospital billing, which is required to maintain a hospital's license, the filing of a hospital lien is not a duty or service "that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(24). In fact, a hospital lien is "a claim against the patient as if it were filed against the patient's house, car, or bank account." *Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007). Thus, the dispute is about a claim made by appellant, not a service provided by appellant. *See id.*

In other cases involving actions for declaratory judgment in which the parties disputed their respective rights and responsibilities under the Texas Hospital Lien Law, the courts have not treated the claims as healthcare liability claims subject to chapter 74. *See Mem'l Hermann Hosp. Sys. v. Progressive County Mut. Ins. Co.*, 355 S.W.3d 123, 126 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("This case concerns the proper reading of the hospital lien statute.").[4] We note that appellant has not cited, nor

---

[4] *See also Speegle v. Harris Methodist Health Sys.*, 303 S.W.3d 32, 34 (Tex. App.—Fort Worth 2009, pet. denied) (involving suit for "a declaration that the hospital lien is invalid because appellees failed to comply with Chapter 146 of the Texas Civil Practice and Remedies Code by not billing Medicare for Speegle's treatment"); *Methodist Hosps. of Dallas v. Mid-Century Ins. Co.*, 259 S.W.3d 358, 359–60 (Tex.

10

has this Court's independent research uncovered, even a single case in which a dispute over a hospital lien was treated as a healthcare liability claim subject to chapter 74. Based on the foregoing, we conclude that the filing of a hospital lien is not a "professional or administrative service[] directly related to health care." *Id.* Therefore, appellee's declaratory judgment claim challenging the validity of the lien fails to meet the second element of a healthcare liability claim.

As noted above, appellee's action for declaratory judgment also includes a request, pled in the alternative, for the court to declare the amount by which appellant's charges exceeded a reasonable and regular rate for the services rendered. We have already concluded that, in this case, the parties' dispute concerning the reasonableness of the amount charged for healthcare services involves "professional or administrative services directly related to health care." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13), (24). Therefore, we agree with appellant that appellee's alternative claim for declaratory relief satisfies the second element of a healthcare liability claim.

Next, we consider whether this claim satisfies the third element of a healthcare liability claim. As noted above, to satisfy this element, "the defendant's act or omission complained of must proximately cause the injury to the claimant." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). The term "claimant" is defined in chapter 74 to mean "a person . . . seeking or who has sought recovery of damages in a health care liability claim." *See id.* § 74.001(a)(2). In the context of this claim, appellee is seeking

---

App.—Dallas 2008, no pet.) (involving allegations that hospital "failed to properly secure its lien as required by section 55.005 of the Texas Property Code"); *Law Offices of Lin & Assocs. v. Mem'l Hermann Hosp. Sys.*, No. 01-08-00891-CV, 2011 Tex. App. LEXIS 803, at *3 (Tex. App.—Houston [1st Dist.] Jan. 31, 2011, pet. denied) (mem. op.) (involving allegations by plaintiff that "Memorial Hermann's hospital lien was defective and [seeking] a declaration that it was entitled to $8,333.33 of the insurance proceeds as its one-third contingency fee").

11

declaratory relief, not an award of damages. Thus, he is not a "claimant" for purposes of the third element of a healthcare liability claim. *See Tex. W. Oaks Hosp., LP*, 371 S.W.3d at 179 ("A claimant is a person seeking damages for an HCLC."). Moreover, because he is not a "claimant" with respect to his action for declaratory judgment, appellee was not subject to the expert report requirement of chapter 74 with respect to that claim. *See id.* § 74.351(a) (requiring a "claimant" to file an expert report). Accordingly, we conclude that the trial court did not err in denying appellant's motion to dismiss with respect to appellee's cause of action for declaratory judgment.[5]

### 3. Fraudulent-Lien Claim

Finally, we consider appellee's fraudulent-lien claim. The elements of a fraudulent-lien claim under chapter 12 of the civil practice and remedies code are as follows: (1) the defendant made, presented, or used a document with knowledge that it was a fraudulent lien; (2) the defendant intended that the document be given legal effect; and (3) the defendant intended to cause plaintiff physical injury, financial injury,

---

[5] We are mindful of the decision of the Texas Supreme Court in *Turtle Healthcare Group, L.L.C. v. Linan*, 337 S.W.3d 865, 868 (Tex. 2011), in which the Court emphasized that "permitting the same underlying facts to give rise to both types of claims [i.e., healthcare liability claims and different types of claims] would effectively negate the procedures and limitations of the TMLA." Although we have concluded that appellee's DTPA claim is a healthcare liability claim subject to chapter 74, we have reached the opposite conclusion with regard to appellee's claim for declaratory judgment. We note that the claims are based on two distinct factual scenarios. *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 183 (Tex. 2012) ("We analyze the applicability of the TMLA and its attendant procedural requirements on the gist of the claimant's allegations."). The facts giving rise to appellee's DTPA claim involve appellant's conduct in rendering healthcare services in a consumer transaction. In contrast, the facts giving rise to appellee's claim for declaratory judgment involve appellant's conduct in filing a lien against appellee to secure payment for healthcare services. As noted above, a hospital lien is "a claim against the patient as if it were filed against the patient's house, car, or bank account." *Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007). Thus, by challenging the validity of the hospital lien in his claim for declaratory judgment, appellee has, in effect, challenged the validity of a claim asserted in the first instance by appellant. Accordingly, we conclude that, because the claims are different in nature and substance, our decision is not one "that would open the door to splicing health care liability claims into a multitude of other causes of action . . . ." *Turtle Healthcare Group, L.L.C.*, 337 S.W.3d at 868.

12

or mental anguish. *See Merritt v. Davis*, 331 S.W.3d 857, 860–61 (Tex. App.—Dallas 2011, pet. denied) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a)).

Appellee has alleged each of the foregoing elements in his cause of action against appellant. The core allegations concern appellant's conduct in seeking to secure payment by filing a hospital lien, which according to appellee, was a fraudulent lien. As set forth above, we have concluded that a claim challenging the validity of a hospital lien does not satisfy the second element of a healthcare liability claim. For the same reasons, we conclude that appellee's fraudulent-lien claim also does not satisfy the second element of a healthcare liability claim. In doing so, we note that other courts have reached the same conclusion in cases involving allegations of fraudulent conduct by a healthcare provider. *See Shanti v. Allstate Ins. Co.*, 356 S.W.3d 705, 713 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (holding that cause of action did not implicate an inseparable part of the rendition of medical services where plaintiff had alleged "a complicated, multi-level scheme to defraud the insurance companies"); *Shannon v. Law-Yone*, 950 S.W.2d 429, 438 (Tex. App.—Fort Worth 1997, pet. denied) ("We thereby distinguish [a] cause of action for common-law fraud from suits governed by [chapter 74] . . . [and] conclude that [a] common-law fraud claim is not a 'health care liability claim.'"). Therefore, the trial court did not err in denying appellant's motion to dismiss with respect to this claim.

### 4. *Dismissal of Healthcare Liability Claim and Motion for Sanctions*

We sustain appellant's issue on appeal only as it relates to appellee's DTPA cause of action. Appellant argues that it is entitled to dismissal of the claim, with prejudice, and reasonable attorney's fees and court costs incurred in connection with

13

the claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b). We agree that appellant

is entitled to this relief with respect to appellee's DTPA cause of action.

### III. CONCLUSION

Accordingly, we affirm the trial court's order in part, reverse it in part, and remand

for further proceedings consistent with this opinion.

_____
NORA L. LONGORIA
Justice

Delivered and filed the
28th day of February, 2013.