## No. 9815.

### COLE, ET AL. v. WELCH, ET AL.

Decided June 6, 1921.

Action to forclose trust deed.  Judgment for plaintiff.

### *Affirmed.*

1. PLEADING—*Waiver.*  Claim by defendant, that plaintiff in an action to foreclose a trust deed could not go behind the record title without the consent of the holder of the apparent paramount title, waived by answering over.

2. REAL PROPERTY—*Title—Notice.*  Actual notice of transfers and proceedings affecting the title to real property is quite as potent and effective as constructive notice conveyed by public records.

3.        *Sheriff's Deed—Caveat Emptor.*  The doctrine of caveat emptor obtains against a sheriff's deed.

*Error to the District Court of Grand County, Hon. Samuel W. Johnson, Judge.*

Messrs. HOWARD & McCRILLIS, for plaintiffs in error.

Mr. GEORGE B. CAMPBELL, for defendants in error.

MR. JUSTICE BAILEY delivered the opinion of the court.

SUIT was by William H. Welch, one of the defendants in error, to foreclose a trust deed, given upon the mining property involved in this suit, located in Grand County, to secure the payment of the balance of its purchase price, which property Welch had theretofore sold and conveyed to O. M. Groves.  Originally Welch was plaintiff, and Groves, with O. M. Cole, The Eugene Mining & Milling Company, and H. F. Adams, as Public Trustee, were defendants.  Later George D. Crowley was substituted, at his own request, as defendant instead of the Eugene Company.  Findings and judgment were for plaintiff, and de-

fendants bring the cause here for review. The parties are designated as below.

The facts necessary for consideration are in substance as follows: In May, 1913, the mining claims involved were the property of The Mollie Groves Mining & Milling Company, when Welch filed in the office of the Clerk and Recorder of the proper county a transcript of a judgment in his favor against that company. In June of the following year he also filed a transcript upon a second judgment in his favor against the same company, in whom the title stood on the record. In March, 1915, a mechanic's lien against the property was filed by one Skretteberg. In May, 1915, a sheriff's certificate of sale of the property was issued to Welch by reason of a levy and sale under an execution upon the transcript of the judgment filed in June, 1914. In February, 1915, a sheriff's certificate of purchase of the property, based upon special execution and sale under a judgment upon the Skretteberg lien, was issued to Cole. In March, 1916, a sheriff's deed was issued to Welch and duly recorded, for the property bought as aforesaid at sheriff's sale. It appears that thereafter Groves purchased the property from Welch, who conveyed it to him by quitclaim deed, which was never recorded, and received back from Groves a trust deed which is the subject of this suit, as security for the payment of the balance of the purchase price, which trust deed was duly recorded.

One of the conditions of the sale to Groves was that he should redeem the property from the lien of Cole. It appears that this was done. Cole, however, instead of a formal release conveyed the property, by request of Groves, direct to The Eugene Mining & Milling Company, which company had been organized by Groves for the express purpose of taking over these assets. In fact, this deed was, upon the findings of the trial court, equivalent to a direct conveyance to Groves. In July, 1919, a sheriff's deed for the property issued to defendant George D. Crowley, on account of a levy and sale under a judgment against the Eugene Company, in favor of The Mary-Florence Mining,

Milling & Leasing Company. With the title in this condition foreclosure suit was brought by Welch, resulting as stated above.

It is urged by defendants, since the condition of the record title is undisputed, that plaintiff cannot go behind that record in his suit to foreclose, without the consent of the holder of the apparent paramount title, which defendant Crowley claims. Authorities are cited to support this proposition. That question is not involved, however, as by answering over defendants have waived whatever strictly legal rights, if any they may have had in this respect, and can have favorable action only upon a full trial of the facts, should such facts warrant relief in their favor. It is free of doubt that all parties concerned had full knowledge and notice of every step taken affecting the title to the property, and are therefore bound by all conveyances, whether of record or not.

The evidence discloses conclusively that Welch sold the property to Groves, giving a quitclaim deed, and received a trust deed back from Groves to secure the payment of the balance of the purchase price. At the time of the delivery of these deeds Groves agreed to settle with Cole, and discharge the lien which Cole held from the sheriff, on account of the sale under the mechanic's lien. When this arrangement was made the parties, who later organized The Eugene Mining & Milling Company, were present and were aware of everything which transpired with reference to the title to this property. It is true that the release from Cole's lien did not take place within the time prescribed by law, but Cole made no objection to this, and while he did not formally release, he conveyed the property under directions from Groves, to the Eugene Company, and this had the effect of a release. The evidence is definite on this point, as also is it plain that Cole had no interest in the transaction other than to get the money due him under the agreement for redemption with Groves.

The Eugene Company thereafter leased the claims to The Mary-Florence Company. The latter company was

organized with practically the same officers and stock-holders as The Eugene Company had. It is true that later the officers of The Mary-Florence Company changed, and after a time litigation arose between The Eugene Company and The Mary-Florence Company, which resulted in the latter company obtaining a judgment against the former, under which the property was ultimately sold, and bid in by the defendant Crowley. Although, under the law applicable to the facts, it is absolutely immaterial whether Crowley knew of the existence of the deed from Welch to Groves, still it is manifest that he could have known, had he exercised the slightest diligence in respect thereto. In any event, it is elementary that the doctrine of *caveat emptor* obtains against a sheriff's deed. Furthermore, it appears Crowley's interests were acquired during the progress of this litigation, and that he was aware of the pendency of this suit before he made the purchase. Therefore he cannot be held to be an innocent purchaser, upon any theory. Besides, he had constructive notice of the deed of trust which in and of itself alone was sufficient to put him on inquiry.

No statute relative to the recording of instruments of conveyance is involved. The only purpose of recording a deed is to give notice as to title. Here each and every of the persons interested had actual notice, and they were all well aware of all phases of the situation. Such actual notice is quite as potent and effective as constructive notice conveyed by public records.

The theory of defendants seems to be that Crowley is the successor in interest of Cole, who it is claimed knew nothing of the transaction between Welch and Groves. All the facts show to the contrary. Cole was fully advised. The Court findings so show and are amply supported by the evidence. His interest, as already shown, was released upon request of Groves by quitclaim deed, direct to The Eugene Company. Neither Cole, nor any of the defendants save Crowley, have any interest in the outcome of the suit. Crowley claims title through a sheriff's deed, which, under

the facts, is no title as against the lien in favor of Welch, evidenced by the duly recorded deed of trust.

Upon elementary and fundamental principles of law, well known to and recognized by lawyer and layman alike, that actual notice is the equivalent of constructive notice, the judgment of the trial court should be and is affirmed.

MR. JUSTICE TELLER, sitting for MR. CHIEF JUSTICE SCOTT, and MR. JUSTICE BURKE concur.